Good morning, Your Honors. May it please the Court. Assistant Federal Public Defender Elizabeth Kruczak on behalf of Demetrius Ramos. I will watch the clock and try to reserve about two minutes for my rebuttal. I want to start by directing the Court to the video that I submitted. It was Exhibit 8E at the evidentiary hearing. And that video shows former Border Patrol Agent Marufo entering my client's detention cell at a little bit after four in the morning and showing him a plastic baggie. And it clearly shows him showing the plastic baggie. That plastic baggie has been, and that interaction between Mr. Marufo and my client has been the source of a tremendous amount of speculation in the case. And it has been just that. It's been speculation. And that speculation implicates both of my main arguments as to the District Court's wholesale adoption of the magistrate judge's report and recommendation, as well as the suppression of my client's statements insofar as it relates to voluntariness. Did you renew in any way the suppression motion after the officer testified at trial and watched the video? Was the issue of the speculation in any way re-raised to the District Court at that point? The voluntariness issue. Certainly, defense counsel vigorously argued voluntariness throughout this entire case, including at trial. That issue of what the baggie meant was litigated at the trial as well. And he certainly made an argument that that statement was coerced. That was part of his defense theory at trial. Did you ask after he testified, look, in light of what he said now, which adds to the record relevant to the issue of suppression, that the statement should now be excluded? I don't think that very specific request was made. I would have to double check to be absolutely sure. But I don't think that specific request was made post that testimony. Counsel, I had a question, too. Obviously, there are two statements at issue, or two conversations at issue. There's the conversation on the side of the road, and there's the conversation in the facility. Now, I've read the transcript for the conversation in the facility. I understand why, defense counsel, you want that excluded. Makes total sense. As to the first conversation, is there a particular statement that was admitted at trial, or is it just the theory is that that kind of got them going down a bad path from the side of the road to the statement in the facility? I see. So the argument there is not so much about the specific conversation that occurred at the side of the road. But what it is, is that my client, my argument is my client was in custody, invoked his Miranda rights, and therefore, that invalidates everything that happens afterward, including the conversation at the facility. Gotcha. Okay. Thank you. Yes. I did want to briefly mention, I know we've sort of moved to the merits, but I wanted to back up if I could, just to clarify my argument as to the district court's adoption of the magistrate's report and recommendation. Because I want to be clear what I am and am not arguing. I acknowledge that there may be situations in which a district court could say I've conducted the appropriate de novo review and reject the objections. My argument is that this is not that case, and I just want to be clear about that. And it's not that case for two particular reasons. One has to do with the baggie. And that is, the magistrate judge completely speculated about what was in the baggie, and then used that speculation to discount my client's credibility and find that he was not threatened or coerced. The magistrate judge acknowledged that the government provided no evidence, but then the magistrate judge went on to then say, but it probably was this medication. Which the record shows it wasn't that medication. There was another agent who testified that he gave my client his medication when my client was not in his cell. And that was clear both at the evidentiary hearing and it was shored up at trial as well. So that wasn't the case. That was objected to very clearly by defense counsel. It wasn't addressed at all in the district court's order. And then defense counsel went even further and filed a motion for reconsideration, pointing out that there had been this improper speculation. And the district court again doubled down and refused to conduct any kind of review. Second point is to the district court's comment on waiver. The district court says, any issues that haven't been raised are waived. And then goes on to say, but in the event that they haven't been waived, they've also been adjudicated. No one knows what those issues are. I don't know. And most importantly, this court doesn't know. And so there's just not a sufficient evidence here that the district court exercised its discretion. So that's my argument as to the report and recommendation. If there are no questions on that, I'll move to voluntariness and the custody argument. In terms of voluntariness, I think the argument, the situation with the baggie is important because that video is objective evidence of Mr. Marufo coming in right before he's taking my client to be interrogated and showing him this baggie. And I acknowledge there's no audio on the video. It's difficult to see. But what is clear is that he shows him the baggie. About a half an hour prior to that, Mr. Marufo had also entered my client's cell, let him know that Mr. Marufo was aware that he was a visa overstay and was in the country illegally, and that it would behoove him to tell the truth. So we have that interaction first. Then we have him showing up with this baggie that he's clearly showing my client. And then we have him taking my client to the interrogation room where my client is clearly being told repeatedly that there is a pathway for him to get out. It's very clear that he wants to stay here with his family. He has a wife and two children here, three children now. And the agents continue to offer him little bits to get him to try to tell them information. And so my argument, not to mention the fact that this was done in the middle of the night. My client was arrested around 9.30. This was after 4 in the morning when he was interrogated. He'd been held in a cell, basically on the floor. You can see that in the video. English is not his first language. He does speak English reasonably well, but it's not his first language. And so all of those circumstances, and I think it is somewhat suspicious that Agent Marufo, in his testimony, explained that he wasn't aware that Border Patrol kept videos of these detention cells. And his attempts to explain what the baggie might have been just don't hold any water. And the fact is the government has never been able to explain what was in this baggie. And so I think for all of those reasons, the district court erred, or really the magistrate judge erred, in making this determination that my client's statement was involuntary. As to the custody issue, our position is that this exceeds what would be a Terry stop, and that this has risen to the level of custody. We had at one point, at the point at which my client asked for an attorney, there were 4 agents present. He was blocked. He was in his car. All the agents testified that they weren't going to let him go. They were pressing him for information. They could not articulate to him why they wanted or needed that information. And he was clearly requesting counsel. And it got to the point where the Border Patrol agents wouldn't tell him. Then they say, you won't give us your driver's license, so we're calling another agent to come in. There's no way a reasonable person under those circumstances would believe that they were free to leave the scene. He wanted to call his attorney. He tried to call his attorney. His attorney didn't answer. He made those... Yeah, but some of the, I mean, some of this were problems of his own making. He refused to identify himself. He won't tell him whether he's a U.S. citizen. He won't provide a driver's license. I mean, these are self-inflicted wounds. Maybe, but my concern is that does a self-inflicted wound then justify them holding him indefinitely? I mean, they say, we're not letting you go. And not only are we not letting you go, we're going to call more people until we get you. And in terms of the driver's license, the Arizona statute cited by the government allows for a person to come in and cure. You can be cited for not having a driver's license, and then you can come back into court and cure that by showing that you had a valid license at the time of the offense. And so he could have been cited and let go. I mean, you know, this is a person... Can they issue a citation for that? I believe that they can. They called the sheriff. They did call the sheriff to try to explain. I mean, I acknowledge that you are required to have your license, but it says the statute, subsection B of the statute cited by the government, says a person who has served a complaint for violating the section is not responsible if you produce in court later your license. So that suggests that you could be cited for that. Right, but can they be cited by Border Patrol? Well, once they called the sheriff, the sheriff could have... The sheriff could have. The sheriff's deputy could have cited him, and he didn't. Right. He didn't, and he just left. And then my client is still sitting there trying to talk to an attorney, trying to figure out what's going on. He made those two calls and then called his law enforcement friend. And I should say there's... When he made the two calls there at 9.03 a.m. to his attorney, attorney didn't answer. It was apparently too late. He then calls his law enforcement friend, talks to him for about 17 minutes, and then is arrested right after that. So, you know, this is not some kind of anticipatory invocation of Miranda. This is, you know, he's being held by law enforcement and trying to get assistance in dealing with their questioning of him. I see that I have a few seconds, so I'll reserve them. Yeah, actually, you're in negative time. Oh, I apologize. But that's okay. I'll give you two minutes. Thank you. Yeah, just a reminder to all the lawyers that, and sometimes I say this in the beginning, when it's flashing red, that's not like the crosswalk where you can kind of walk faster. That means you're actually, time is over, and that's okay. We had a lot of questions for you. Don't worry about it. But when it's flashing red, that means time is over and you want to wrap up. We had a lot of questions for you, and I'll give you the two minutes. Not a problem. It gets confusing. The red light flashing, you know. May it please the court. I'm Bob Miskell from the U.S. Attorney's Office of Tucson on behalf of the United States. First, at the traffic stop, the defendant was not in custody for purposes of Miranda at that point. That was just a turry stop that was extended because the officers were investigating the alien smuggling incident, and it was extended because the defendant did not have a license and would not identify himself. He wouldn't provide a date of birth. So for those reasons, the defendant was not in custody. His call to his attorney was not an invocation of Miranda because he couldn't invoke Miranda because he wasn't in custody at that point. So that meant it was permissible for the agents to then re-Mirandaize him at the station and attempt to interview him again. At the station, the defendant's statement was voluntary. Well, I have some concerns about the district court's order because it's a four-and-a-half-page order with a lot of string cites and parentheticals about the standards for review of magistrate judges' orders. And I just did a quick Westlaw search using some phrases from here. And in the period from March of 2021 to last week, this judge has used this exact four-and-a-half-page order 26 times in reviewing reports and recommendations. Now, occasionally footnote two is merged into the text, but this is a big four-and-a-half-page rubber stamp that is used by this judge to just say, I'm doing a de novo review, but I'm just going to give you this string cite of words and I'm not going to tell you anything about anything you've raised. Why should we, who have supervisory authority over the district courts, why should we tolerate this kind of behavior? I think the premise of your argument there is that the judge, the district judge, is not being honest when he says he did a de novo review. Well, the point is we don't have a record to review. The comments that the magistrate judge makes in the footnote about the baggie are clearly erroneous. They seem clearly erroneous to me, but I can't tell why the district court exercising de novo review didn't do anything about it because he just pulled out the standard order and signed it. If the district judge did a de novo review, everything is fine, and the district judge said he did a de novo review, there's nothing in the record that would suggest he did not do a de novo review. Other than there's an obvious error that he let slip. He missed something, perhaps, but he said repeatedly he did a de novo review. And so the law should be that we have to take that and we just look the other way and there's nothing we can do about it. We can never look behind that and say, you know, this is a case where we need to see the homework. We need to see it. Well, this court's case law has been that that is sufficient, basically, and if this court wants to have a different standard, they can certainly impose it. Well, I'm not sure we've had as extreme a situation as the one I just described where we have a demonstrated pattern of using a standard order with the same exact four and a half pages of verbiage and footnotes. The sites are all the same. And then we're just supposed to say, well, you said de novo, even though there's an obvious mistake that was called out to you twice and you did nothing about it and we just have to say okay. And again, that is only a problem if this court is convinced that these, in these instances, the district court is not doing a de novo review. And I don't think you can, on this record, reach that conclusion. I don't, there's just. Do you think what the magistrate judge said about this being medicine was accurate? I think it was a fair inference from the record of the suppression hearing. It does not. I mean, it looks like a white powder. I've watched the video and it does not look like anything relating to medication. And then there was also testimony that someone else was the one who supplied him with the medicine. So why isn't, in light of those two things, why isn't it clearly erroneous to have said in the footnote that the baggie was medicine? Again, I think that's a fair inference from the record that we have. The video is not particularly clear. The agent testified he didn't do that. The magistrate judge went through a whole list of why he found the defendant's testimony that he was threatened not credible. And it wasn't simply the video. It was the defendant's demeanor, the defendant changing his story. All of those bases supported the magistrate judge's conclusion that the defendant was not credible, specifically when he said he was threatened. There are, I mean, the magistrate certainly is correct that there's a lot to work with in finding him not to be credible. But this was kind of an important piece of weighing the relative credibility. And so what I'm wondering is, in light of the mistake about what the baggie was all about, whether it warrants a fresh look. I don't think so, particularly in light of the evidence that was obtained at trial from Agent Marufo, who basically explained, after seeing the video, explained what was going on. But that seems almost even worse, because he never says the medicine theory. So he basically confirms that the magistrate judge was wrong in what the magistrate judge had said in the order. So if you take the trial testimony, it really seems like it needs a do-over at that point. The testimony at trial confirms that he wasn't threatening him, that Agent Marufo was not threatening the defendant. That's what that testimony confirms. After Agent Marufo has a chance to review the video, he then again says he did not threaten the defendant. He did not tell him that he was going to pursue drug charges. And that's all supported by the record, so that there would be no point in doing this over. But his new theory was that it was an evidence bag that he just happened to have in his hand as he was passing by. But it kind of looks like the familiar supermarket Ziploc bags. And he's clearly—several times he holds it out to him. So it's not just something that he happened to be carrying as he's saying, you know, you need to come— he's clearly communicating to him about the baggie. And that doesn't seem consistent with what he claimed at trial. So it raises an issue of relative credibility that may need a fresh reassessment. And again, I would say if you look at the record as a whole, particularly of the suppression hearing with the defendant's testimony, even if you assume—I just don't see that that's enough to overcome the magistrate judge's findings that the defendant was not credible. The defendant's testimony was not credible at the suppression hearing. He was not threatened. The whole scenario on the tape indicates he wasn't threatened. It was basically attempting to negotiate with the agents about what can you do for me. And the agents keep telling him, we can't do anything for you. It's subject to decisions by higher-level officials. So in light of all of that, the defendant's statement was voluntary. The defendant's testimony at the suppression hearing was not credible. And the case should be affirmed. And the district court did not err by not doing a full, detailed explanation of his de novo review, which he said he did. And again, there's no evidence in the record to suggest that he was being dishonest when he said that. Unless the court has any further questions? All right. Thank you. Thank you. I won't overstay my welcome this time. I just want to make one point as to weighing credibility. Judge Collins, as you were saying, the baggie is critical to credibility because it bolsters my client's credibility and it takes away from the agent's credibility. And that's a really critical balance on a very critical fact. And that is why this does need to go back for a do-over. And so we would ask that the court order that. And unless there are any further questions? All right. Thank you very much. Thanks to both for their briefing and argument in this case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS